Alexander L. Conti, Esq. (California Bar No. 155945)
**CONTI LAW**
23 Corporate Plaza Drive, #150
Newport Beach, CA 92660
Telephone:   (949) 791-8555
Facsimile:   (949) 791-8556
Email: aconti@conti-law.com

Attorneys for Defendants
Subject Enterprise, Inc. and Coda Subject

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA CAREY, and CODY LATZER, *on behalf of themselves and others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>J.A.K.'S PUPPIES, INC., JOLYN NOETHE, KIMBERLY DOLPHIN, RUSSELL KIRK, RESCUE PETS IOWA CORP., TBHF LLC D/B/A/ THE PET X CHANGE, BARK ADOPTIONS, STEPHANIE VAUGHN, ANA DIAZ, PET CONNECT RESCUE, INC., RAY ROTHMAN ALYSIA ROTHMAN, SUBJECT ENTERPRISE, INC., CODA SUBJECT, MICADA, INC. D.B.A. ANIMAL KINGDOM PET SHOP, and ADAM TIPTON,<br><br>Defendants. | Case No. 5:21-cv-02095-MEMF-KK<br>Honorable Maame Ewusi-Mensah Frimpong<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SUBJECT ENTERPRISE, INC., AND CODA SUBJECT'S MOTION TO STRIKE CLASS CLAIMS PURSUANT TO RULE 12(f) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>[*Notice of Motion and Motion Filed Concurrently Herewith; [Proposed] Order lodged concurrently herewith*]<br><br>Date: June 2, 2022<br>Time: 10 AM<br>Courtroom: 8B<br><br>Action Filed: December 16, 2021<br>Trial Date:     None set |

# <u>TABLE OF CONTENTS</u>

**Page**

I. Introduction ................................................................................................ 1

II. Factual and Procedural History ................................................................. 1

    A. Plaintiffs' General Allegations. ........................................................ 1

    B. Plaintiffs' Allegations Against SEI As The Transportation Provider In JAKs' Operation. ......................................................................... 3

    C. Defendants' Alleged Misrepresentations. ......................................... 3

    D. The Named Plaintiffs. ....................................................................... 3

    E. The Proposed Class. .......................................................................... 4

III. Legal Standard ........................................................................................... 4

    A. Class Certification Under Rule 23(a) and Rule 23(b) ....................... 4

    B. Rule 12(f) Motion To Strike. ............................................................ 5

IV. Legal Argument .......................................................................................... 7

    A. Plaintiffs Have Not Met Their Burden To Satisfy Rule 23(b) ........... 7

        1. Plaintiffs Are Not Entitled To Class Certification For An "Injunctive Relief Class" Under Rule 23(b)(2). ......................... 7

        2. Plaintiffs Are Not Entitled To Class Certification Under Rule 23(b)(3) ............................................................................ 9

            a. Individual Issues Predominate In Plaintiffs' RICO Claims. ............................................................................ 10

            b. Individual Issues Predominate In State Law Claims. ..... 10

    B. Plaintiffs Have Not Meet Their Burden To Satisfy Rule 23(a). .......... 13

        1. Plaintiffs' Allegations Regarding "Commonality" Do Not Meet Requirement of Rule 23(a)(2). ......................................... 13

            a. Whether Defendants' practices for procuring and labeling puppies were unfair and/or unlawful in any respect. ............................................................................ 14

            b. Whether dogs supplied by JAKs could be legally sold in California after January 1, 2019, merely by being funneled through sham "rescue" organizations ............... 16

            c. Whether Defendants' conduct is deserving of punitive and/or treble damages .................................................... 17

i

d.     Whether Plaintiffs and class members are entitled to injunctive relief.................................................................. 17

e.     Whether Defendants' conduct caused class members damages. ........................................................................ 18

2.    Plaintiffs' Allegations Regarding "Typicality" Do Not Meet Requirement of Rule 23(a)(3).................................... 19

3.    Plaintiffs' Allegations Regarding "Adequacy of Representation" Do Not Meet Requirement of Rule 23(a)(4). . 20

4.    Plaintiffs' Class Allegations for "Numerosity" May Not Meet Requirement of Rule 23(a)(1) If Proposed Class Is Reduced. ..................................................................... 21

C.    Plaintiffs' Class Allegations Should Be Stricken At Pleading Stage. . 22

V.    Conclusion ...................................................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SUBJECT ENTERPRISE, INC., AND CODA SUBJECT'S MOTION TO STRIKE CLASS CLAIMS

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

Burdick v. Union Sec. Ins. Co.,
   2009 WL 4798873 (C.D. Cal. 2009) ...................................................................... 19

5

6

Clark v. State Farm Mut. Auto Ins. Co.,
   231 F.R.D. 405 (C.D. Cal. 2005) ............................................................................ 6

7

Cohen v. DIRECTV, Inc.,
   178 Cal. App. 4th 966 (2009) ................................................................................ 12

8

9

Ellis v. Costco Wholesale Corp.,
   657 F.3d 970 (9th Cir. 2011) ............................................................................ 5, 8

10

11

Fine v. ConAgra Foods, Inc.,
   No. CV 10–01848 SJO, 2010 WL 3632469 (C.D. Cal. 2010) .............................. 18

12

Garrison v. Whole Foods Mkt. Grp., Inc.,
   No. 13–5222, 2014 WL 2451290 (N.D. Cal. June 2, 2014) .............................. 8, 18

13

14

Hovsepian v. Apple, Inc.
   No. 08–5788, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ............................ 6, 19

15

16

John v. AIG Property Casualty Company Group, Inc.,
   No. CV 18-8664-RSWL-JEM, 2019 WL 109441 (C.D. Cal. January 4, 2019) .......... 6

17

Jones v. ConAgra Foods, Inc.,
   No. C 12–01633 CRB, 2014 WL 2702726 (N.D. Cal. 2014) ................................ 9

18

19

Keegan v. Am. Honda Motor Co.,
   284 F.R.D. 504 (C.D. Cal. 2012) .......................................................................... 21

20

21

Mazza v. American Honda Motor Co., Inc.,
   666 F.3d 581 (9th Cir. 2012) ................................................................................ 11

22

McVicar v. Goodman Global, Inc.,
   No. SA CV 13-1223-DOC, 2015 WL 4945730 ...................................................... 11

23

24

Moheb v. Nutramax Labs., Inc.,
   No. CV 12–3633–JFW, 2012 WL 6951904 (C.D. Cal. 2012)............................ 8, 18

25

Moore v. Apple Inc.,
   309 F.R.D. 532 (N.D. Cal. 2015) .......................................................................... 19

26

27

In re NJOY,
   supra, 120 F.Supp.3d at 1119 .......................................................................... 9, 11

28

iii

Ono v. Head Racquet Sports USA, Inc.,
   No. CV 13–4222 FMO, 2016 WL 6647949 (C.D. Cal. March 8, 2016) ............................ 11

Poulos v. Caesars World, Inc.,
   379 F.3d 654 (9th Cir. 2004) .................................................................................. 10

Rahman v. Mott's LLP,
   2014 WL 325241 (N.D. Cal. 2014) ............................................................................ 9

Sanders v. Apple Inc.,
   672 F.Supp.2d 978 (N.D. Cal. 2009) ................................................................... 6, 19

Sidney–Vinstein v. A.H. Robins Co.,
   697 F.2d 880 (9th Cir. 1983) .................................................................................... 6

Stearns v. Ticketmaster Corp.,
   supra, 655 F.3d at 1020 ......................................................................................... 11

Tietsworth v. Sears, Roebuck and Co.,
   720 F.Supp.2d 1123 (N.D. Cal. 2010) .................................................................. 6, 7

Wal–Mart Stores, Inc. v. Dukes,
   564 U.S. 338 (2011) ...................................................................................... 5, 7, 13

Zinser v. Accufix Research Institute, Inc.,
   253 F.3d 1180 (9th Cir. 2001), amended, 273 F.3d 1266 (9th Cir. 2001) ..................... 5, 12

**Statutes**

18 U.S.C. § 1962(c) ...................................................................................................... 1

18 U.S.C. § 1962(d) ..................................................................................................... 1

Cal. Civ. Code § 3294(g) ........................................................................................... 17

Cal. Health & Saf. Code § 122354.5(a) ........................................................................ 2

**Other Authorities**

Fed. R. Civ. P. 12(f) .................................................................................................... 5

Fed. R. Civ. P. 23(a)(1)-(4) ......................................................................................... 4

Fed. R. Civ. P. 23(a)(2) ............................................................................................. 13

Fed R. Civ. P. 23(a)(3) .............................................................................................. 20

Fed. R. Civ. P. 23(a)(4) ............................................................................................. 20

Fed. R. Civ. P. 23(b)(3) ............................................................................................... 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SUBJECT ENTERPRISE, INC., AND CODA SUBJECT'S MOTION TO STRIKE CLASS CLAIMS

Fed. R. Civ. P. 23(b)(3)(A)-(D) ................................................................. 9

Fed. R. Civ. P. 23(c)(1)(A) ....................................................................... 6

Fed. R. Civ. P. 23(d)(1)(D) ....................................................................... 7

v

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SUBJECT ENTERPRISE, INC., AND CODA SUBJECT'S MOTION TO STRIKE CLASS CLAIMS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      Introduction

Plaintiffs seek to represent a class of individuals who purchased puppies allegedly sourced from defendant JAK's Puppies, Inc. ("JAKs") on or after January 1, 2019.  Plaintiffs' class allegations should be stricken because they do not satisfy the requirements of class certification pursuant to Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure.

First, Plaintiffs have not met their burden of satisfying at least one of the requirements under Rule 23(b).  Plaintiffs cannot satisfy either Rule 23(b)(2) because they seek individualized monetary relief for their class members, or Rule 23(b)(3) because individual issues predominate over common issues and a class action is not superior to other methods.  On this ground alone, Plaintiffs' class action allegations should be stricken.

Second, Plaintiffs cannot satisfy the requirements of commonality, typicality, adequacy of representation, and numerosity under Rule 23(a).

Third, Plaintiffs' class allegations against SEI should be stricken at the pleading stage because it is clear from the Complaint that a class action cannot be certified.  For these reasons discussed more fully below, SEI's Motion should be granted.

### II.     Factual and Procedural History

#### A.      Plaintiffs' General Allegations.

On December 16, 2021, Plaintiffs filed their 79-page complaint alleging the following federal and state law claims against sixteen defendants: (1) Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (2) RICO conspiracy, 18 U.S.C. § 1962(d); (3) Violation of California's Unfair Competition Law ("UCL"), Business and Professions Code section 17200, *et seq*.; (4) Violation of California's Consumer Legal Remedies Act ("CLRA"), Civil Code

1    section 1770, *et seq*.; and (5) Unjust Enrichment.

2          The gravamen of Plaintiffs' complaint is that defendant JAKs, along with the

3    other defendants, operated a scheme to violate California's former "Pet Store Law"[1]

4    by breeding puppies in puppy mills and using "sham rescue" organizations,

5    including defendant Bark Adoptions, Pet Connect Rescue, Rescue Pets Iowa, and

6    TBHF LLC d/b/a The Pet X Exchange  ("Rescue Entities")[2], to funnel puppies to

7    pet stores in California.  Dkt. No. 1, ¶¶ 22-29.  Rescue Entities were allegedly

8    owned and operated by different individuals in different states: (1) Defendant Bark

9    Adoptions was operated by Defendants Stephanie Vaughn and Ana Diaz in

10   California, (2) Defendant Pet Connect Rescue was operated by Defendants Alysia

11   and Ray Rothman in Missouri, and (3) Defendant Rescue Pets Iowa was operated by

12   Defendant Russell Kirk In Iowa.  Dkt. No. 1, ¶¶ 22-38.  Plaintiffs allege Rescue

13   Entities operated for the purpose of changing legal title of the puppies so they could

14   be labeled as "rescues" by the pet stores.  Dkt. No. 1, ¶¶ 24, 33, 68.  Plaintiffs allege

15   the pet stores sold the puppies as rescues for premium prices ranging from $1,200 to

16   $2,000 or more.  Dkt. No. 1, ¶¶ 201, 205, 212, 215. Plaintiffs identify one pet store,

17   Animal Kingdom, as a defendant, but they indict other pet stores as participants in

18   JAKs' operation, including: (1) pet stores owned and operated by David Salinas,

19   which include Broadway Puppies, The Fancy Puppy, Hello Puppies, Pups & Pets,

20   National City Puppy, The Puppy Store, LLC, SoCal Puppy, and Yellow Store

21   Enterprises, LLC (collectively, the "Salinas Pet Stores") (Dkt. No. 1, ¶ 128); (2) pet

22

---

23   [1] Prior to the amendment that went into effect January 1, 2021, the Pet Store Law
     stated: "A pet store operator shall not sell a live dog, cat, or rabbit in a pet store
24   unless the animal was obtained from a public animal control agency or shelter,
     society for the prevention of cruelty to animals shelter, humane society shelter, or
25   rescue group that is in a cooperative agreement with at least one private or public
     shelter . . . ."  See former Cal. Health & Saf. Code § 122354.5(a).

26   [2] Plaintiffs allege some of the rescue operations and pet stores have been dissolved
     or shut down, including Defendant Rescue Pets Iowa, all of non-party Chavez Pet
27   Stores, several of non-party Salina Pet Stores, and non-party Puppies 4 Less pet
     store.  Dkt. No. 1, ¶¶ 79, 132, 142, and 144.

28

1   stores owned and operated by Amilcar Chavez, which include Bark Avenue,

2   Escondido Pets, and Bark Boutique (collectively, the "Chavez Pet Stores") (Dkt.

3   No. 1, ¶ 139); and (3) Puppies 4 Less owned and operated by Anita Chavira (Dkt.

4   No. 1, ¶ 144).

5       **B.    Plaintiffs' Allegations Against SEI As The Transportation Provider**

6       **In JAKs' Operation.**

7       Plaintiffs allege SEI's role in the alleged puppy mill operation was

8   transporting puppies from Iowa to California and collecting payments from the pet

9   stores.  Dkt. No. 1, ¶¶ 39-41, 85-88, 114-117, 171-180. Plaintiffs allege JAKs

10  devised the payment system whereby payments made by the pet stores to JAKs were

11  "disguised" as "exorbitant transport costs" paid to SEI.  Dkt. No. 1, ¶¶ 171-172.

12  The payments were allegedly transferred to JAKs, minus a "small cut of those

13  funds" kept by SEI.   Dkt. No. 1, ¶ 173.  Plaintiffs' Complaint includes a list of

14  alleged payments made by Defendant Animal Kingdom and non-party pet stores to

15  SEI from December 2018 to March 2019, which Plaintiffs obtained from a "partial

16  collection of records" from an unidentified source.  Dkt. No. 1, ¶ 176.

17      **C.    Defendants' Alleged Misrepresentations.**

18      Plaintiffs allege all of the pet stores "uniformly" misrepresented that the

19  puppies were rescues through four different types of representations: (1) the cage

20  cards at the pet stores; (2) the pet dealer disclosures at the time of sale; (3) the oral

21  representations by the pet store employees; and (4) the online advertisements by the

22  pet stores. Dkt. No. 1, ¶¶ 146-154; 182-202.  The Complaint does not allege that any

23  individual from SEI made a knowing and intentional misrepresentation to Plaintiffs,

24  let alone a misrepresentation upon which Plaintiffs relied.

25      **D.    The Named Plaintiffs.**

26      The named plaintiff, Rebecca Carey ("Plaintiff Carey"), allegedly purchased a

27  Cockapoo from the Animal Kingdom pet store in Santa Barbara County, California.

28  Dkt. No. 1, ¶ 205.  Plaintiffs allege that Animal Kingdom misrepresented the puppy

was a rescue sourced from Bark Adoptions Rescue, and that Plaintiff Carey relied on the misrepresentations made on the cage card, the pet dealer disclosure at the time of sale, and oral representations by the pet store employee.  Id. at ¶ 205-210. She does not allege she was exposed to, or relied on, online advertisements from pet stores.

The named plaintiff, Cody Latzer ("Plaintiff Latzer"), allegedly purchased an Australian cattle dog from a different Animal Kingdom pet store in San Luis Obispo County, California. Dkt. No. 1, ¶ 211.  Plaintiffs allege that Animal Kingdom misrepresented the puppy was a rescue sourced from Pet Connect Rescue, and that Plaintiff Latzer relied on the misrepresentations made on the cage card and the pet dealer disclosure, but not on any oral representations by pet store employees or online advertisements from the pet store.  Id. at ¶ 211-220.

### E.    The Proposed Class.

Plaintiffs seek to represent a proposed class defined as follows:

> All persons who, on or after January 1, 2019, purchased dogs in the State of California supplied by J.A.K.'s. Excluded from the Class are (1) Defendants and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

Dkt. No. 1, ¶ 12.  Critically, the proposed class includes individuals who may not have purchased their dogs from defendant Animal Kingdom or a pet store at all, individuals who were not exposed to, or relied on, the same type of alleged misrepresentations by the pet stores, and individuals who may not have relied on any alleged misrepresentation in making their decision to purchase a puppy.

## III.    Legal Standard

### A.    Class Certification Under Rule 23(a) and Rule 23(b).

Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure set forth the requirements for class certification.  See Fed. R. Civ. P. 23(a), (b).

Rule 23(a) requires parties seeking class certification to satisfy the following

4

four requirements: (1) Numerosity: the class is so large that joinder of all members is impracticable; (2) Commonality: there are one or more questions of law or fact common to the class; (3) Typicality: the named parties' claims are typical of the class; and (4) Adequacy of representation: the class representatives will fairly and adequately protect the interests of other members of the class. <u>See</u> Fed. R. Civ. P. 23(a)(1)-(4).

Rule 23(b) states that a class action may be maintained only if all of the requirements in Rule 23(a) are satisfied and at least one of its requirements is satisfied. Fed. R. Civ. P. 23(b).   Here, Plaintiffs seek class certification as an "injunctive relief class" under Rule 23(b)(2), which states "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Plaintiffs also seek class certification under Rule 23(b)(3), which requires them to show common questions of law and fact predominate over individual ones, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

A plaintiff must "affirmatively demonstrate" compliance with the requirements under Rule 23.  <u>See</u> <u>Wal–Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011).  "The United States Supreme Court requires district courts to engage in a '*rigorous analysis*' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23." <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 980 (9th Cir. 2011)(emphasis added)(citing <u>General Telephone Co. of Southwest v. Falcon</u>, 457 U.S. 147, 161 (1982)).  The party seeking certification "bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b)." <u>Zinser v. Accufix Research Institute, Inc.</u>, 253 F.3d 1180, 1186 (9th Cir. 2001), <u>amended</u>, 273 F.3d 1266 (9th Cir. 2001).

**B.**     **Rule 12(f) Motion To Strike.**

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may

1    strike from a pleading an insufficient defense or any redundant, immaterial,

2    impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule

3    12(f) motion "is to avoid the expenditure of time and money that must arise from

4    litigating spurious issues by dispensing with those issues prior to trial." Sidney-

5    Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

6         SEI acknowledges a motion to strike is generally viewed with disfavor and this

7    district has denied a motion to strike even "conclusory class allegations" before a

8    motion for class certification is filed. See Clark v. State Farm Mut. Auto Ins. Co.,

9    231 F.R.D. 405, 406 (C.D. Cal. 2005)(finding "conclusory class allegations" that

10   addressed each element of Rule 23 were sufficient to survive a motion to strike, but it

11   is an "entirely separate matter" whether motion for class certification would succeed).

12        There are California district court opinions, however, that have recognized a

13   district court's authority to grant a motion to strike class allegations when it is clear

14   from the complaint that the class claims cannot be maintained. See Sanders v. Apple,

15   Inc., 672 F.Supp.2d 978, 990–91 (N.D. Cal. 2009)(striking class allegations because

16   the class definition included individuals who did not suffer injuries and, therefore, did

17   not have standing, and the court "would be forced to engage in individual inquiries of

18   each class member with respect to materiality of the statement, whether the member

19   saw Apple's advertisements or visited Apple's website, and what caused the member

20   to make the purchase"); Hovsepian v. Apple, Inc., No. 08-5788, 2009 WL 5069144,

21   *6 (N.D. Cal. Dec. 17, 2009)(striking class allegations because purported class

22   included individuals who had no injury and, thus, no standing to sue); see also John

23   v. AIG Property Casualty Company Group, Inc., No. CV 18-8664-RSWL-JEM, 2019

24   WL 109441 (C.D. Cal. Jan. 4, 2019)(recognizing "a party may preemptively move to

25   strike class allegations before the plaintiff has requested class certification" and, thus,

26   striking class allegations that did not recite Rule 23 requirements)(citing Tietsworth

27   v. Sears, Roebuck and Co., 720 F.Supp.2d 1123, 1146 (N.D. Cal. 2010)).

28        Further, Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure provides that

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SUBJECT ENTERPRISE,
INC., AND CODA SUBJECT'S MOTION TO STRIKE CLASS CLAIMS

"[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).   Similarly, Rule 23(d)(1)(D) gives the district court discretion to issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  The foregoing rules were recognized by one district court in the Northern District of California as giving the district court authority to strike class allegations at the pleading stage.  See Tietsworth v. Sears, Roebuck and Co., 720 F.Supp.2d 1123, 1146 (N.D. Cal. 2010)(recognizing district court's authority under Rule 23(c)(1)(A), Rule 23(d)(1)(D), and Rule 12(f) to strike class allegations prior to discovery if complaint demonstrates a class action cannot be maintained).

## IV.    Legal Argument

### A.    Plaintiffs Have Not Met Their Burden To Satisfy Rule 23(b).

Plaintiffs have not met their burden of alleging class claims pursuant to Rule 23(b) of the Federal Rules of Civil Procedure.  See Dkt. No. 1, ¶¶ 230-234.   As explained below, Plaintiffs are not entitled to class certification under either Rule 23(b)(2) or Rule 23(b)(3).  Therefore, the Court should strike Plaintiffs' class claims on this ground alone.

### 1.    Plaintiffs Are Not Entitled To Class Certification For An "Injunctive Relief Class" Under Rule 23(b)(2).

Plaintiffs are not entitled to class certification for an "injunctive relief class" under Rule 23(b)(2) for two reasons.

First, Plaintiffs appear to seek class certification under Rule 23(b)(2)[3] because they allege "Defendants acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate the injunctive relief sought on behalf of the Class." Dkt. No. 1, ¶ 234.  In Wal–Mart Stores, Inc. v. Dukes, supra, 564 U.S. 338,

---

[3] Plaintiffs generally cite to Rule 23(b), not to the subsections.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS SUBJECT ENTERPRISE, INC., AND CODA SUBJECT'S MOTION TO STRIKE CLASS CLAIMS

the United States Supreme Court reversed a grant of class certification and expressly limited a plaintiff's ability to certify a class under Rule 23(b)(2) when monetary damages are sought.   The Court held Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages" and "individualized monetary claims belong in Rule 23(b)(3)" and not in Rule 23(b)(2). Id. at 360-361, 362.  The court did not decide whether class certification under Rule 23(b)(2) would be proper where the claim for monetary relief was "incidental" to the claim for injunctive relief.  Id. at 366.

Here, Plaintiffs seek individualized monetary relief for the proposed class members in their Prayer for Relief in the form of restitution, disgorgement, refund and/or "other monetary damages" including "compensatory, incidental, or consequential damages."  Dkt. No. 1, ¶ 325(e); see also Ellis, supra, 657 F.3d at 987-988 (noting that "compensatory damages require individual determinations.") Plaintiffs' demand for monetary damages is individualized, not incidental, to injunctive relief because class members allegedly paid different purchase prices for their puppies, ranging from $1,200 to $2,000 or more.  Dkt. No. 1, ¶¶ 201, 205, 215. Based on the holding in Dukes, Plaintiffs are not entitled to class certification under Rule 23(b)(2).

Second, Plaintiffs lack standing to represent an injunctive relief class because they do not allege that they face a "real and immediate threat of repeated injury." Garrison v. Whole Foods Mkt. Grp., Inc., No. 13–5222, 2014 WL 2451290, *5 (N.D. Cal. June 2, 2014)(citations omitted)("It may very well be that the legislative intent behind California's consumer protection statutes would be best served by enjoining deceptive labeling . . . But the power of federal courts is limited, and that power does not expand to accommodate the policy objectives underlying state law.")

In order to establish Article III standing for injunctive relief, a plaintiff in the consumer context must allege that he intends to purchase the product in the future. See Moheb v. Nutramax Labs., Inc., No. CV 12–3633–JFW (JCx), 2012 WL

6951904, *6 (C.D. Cal. 2012)(holding plaintiff failed to satisfy Rule 23(b)(2) because plaintiff and class members no longer buy defendant's product and "thus, will obtain no benefit from an injunction concerning Defendant's advertising because they cannot demonstrate a probability of future injury"); <u>Jones v. ConAgra Foods, Inc.</u>, No. C 12–01633 CRB, 2014 WL 2702726, *12-13 (N.D. Cal. June 13, 2014)(holding plaintiffs lacked standing under Rule 23(b)(2) because there was no evidence that they planned to buy defendants' products in the future); <u>Rahman v. Mott's LLP</u>, No. CV 13-3482 SI, 2014 WL 325241, *10 (N.D. Cal. Jan. 29, 2014) (stating that "to establish standing [for injunctive relief], plaintiff must allege that he intends to purchase the products at issue in the future").

Plaintiffs do not allege, and cannot plausibly allege, that they face a "real and immediate threat of repeated injury" and, therefore, class certification must be denied.

## 2.    Plaintiffs Are Not Entitled To Class Certification Under Rule 23(b)(3).

Similarly, Plaintiffs are not entitled to class certification under Rule 23(b)(3) because they do not satisfy its requirements, which are that (i) questions of law or fact common to purported class members predominate over any questions affecting only individual members and that a (ii) class action is superior to other available methods for fairly and efficiently adjudicating the controversy. <u>See</u> Fed. R. Civ. P. 23(b)(3). The following matters are pertinent to these findings:

(A)    the class members' interests in individually controlling the prosecution  or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

<u>See</u> Fed. R. Civ. P. 23(b)(3)(A)-(D).   "The predominance requirement is 'far more demanding' than the commonality requirement of Rule 23(a)." <u>In re NJOY, Inc. Consumer Class Action Litig.</u>, 120 F.Supp.3d 1050, 1102 (C.D. Cal. 2015)(quoting

1    Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623–24 (1997)).

2                        a.      **Individual Issues Predominate In Plaintiffs' RICO**

3                                       **Claims.**

4         Class certification is not appropriate for Plaintiffs' RICO claims because

5    individual reliance issues related to proof of causation predominate over common

6    questions.

7         "Causation lies at the heart of a civil RICO claim.  Lumping claims together in

8    a class action does not diminish or dilute this requirement."  Poulos v. Caesars World,

9    Inc., 379 F.3d 654, 664 (9th Cir. 2004)(affirming denial of class certification in civil

10   RICO action because individualized showing of reliance was required to prove

11   proximate causation).  In order to establish a claim of civil RICO wire or mail fraud,

12   Plaintiffs "must prove individualized reliance where that proof is otherwise necessary

13   to establish actual or proximate causation.'"  Id. at 658.

14        Plaintiffs allege the putative class members relied on different

15   misrepresentations in the form of cage cards, pet dealer disclosures, statements by pet

16   store employees, and online advertisements from different pet stores, which caused

17   them to pay more for their puppies. Dkt. No. 1,  ¶¶ 253, 279, 298.  In order to prove

18   causation under RICO, putative class members will need to present individualized

19   evidence of their reliance on the various misrepresentations from the various pet

20   stores, which would require thousands of mini-trials.  See Poulos v. Caesars World,

21   Inc., supra, 379 F.3d at 665 (stating "individualized reliance issues related to

22   plaintiffs' knowledge, motivations, and expectations bear heavily on the causation

23   analysis").  Because individual reliance issues predominate over common questions,

24   class certification is inappropriate.

25                     b.      **Individual Issues Predominate In State Law Claims.**

26        Similarly, class certification is not appropriate for Plaintiffs' state law claims.

27        A federal district court looks to the elements of the state law claims to

28   determine whether the claims and defendants' affirmative defenses can yield a

common answer that is "apt to drive the resolution of the litigation." See Ono v. Head Racquet Sports USA, Inc., No. CV 13–4222 FMO (AGRx), 2016 WL 6647949, at *9 (C.D. Cal. March 8, 2016)(citing Abdullah v. U.S. Security Associates, Inc. 731 F.3d 952, 957 (9th Cir. 2013), cert. denied, 135 S.Ct. 53 (2014))(internal quotations omitted).   The Ninth Circuit has held that class certification for claims under California's UCL and CLRA is not appropriate where each class member was not exposed to the same misrepresentation and, therefore, the putative class could not be presumed to have relied on the same misrepresentation.   See Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 596 (9th Cir. 2012)(vacating district court's class certification order because a "presumption of reliance does not arise when class members 'were exposed to quite disparate information from various representatives of defendant'")("Mazza")(quoting Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020-21 (9th Cir. 2011), abrogated on other grounds as recognized by Green v. Fed. Express Corp., 614 F. App'x 905 (9th Cir. 2015)).

Indeed, the predominance requirement may not be satisfied in UCL cases where "there was no cohesion among the [class] members because they were exposed to quite disparate information from various representatives of the defendant." Stearns v. Ticketmaster Corp., supra, 655 F.3d at 1020; In re NJOY, Inc. Consumer Class Action Litig., supra, 120 F.Supp.3d at 1109-1111 (denying class certification because alleged misrepresentations were not "sufficiently substantial or pervasive to give rise to a presumption that all class members were exposed to the advertisements)("NJOY"); Ono v. Head Racquet Sports USA, Inc., supra, 2016 WL 6647949, at *9 ("Plaintiff urges the court to focus on the classwide nature of the materiality inquiry—and thus the reliance inquiry—but it neglects the logically predicate requirement that the misrepresentation was actually made to the class members")("Ono"); McVicar v. Goodman Global, Inc., No. SA CV 13-1223-DOC (RNBx), 2015 WL 4945730, *12 (C.D. Cal. Aug. 20, 2015)(denying class certification under Rule 23(b)(3) because "individual questions regarding class

11

1  cohesion, specifically whether putative class members were exposed to any alleged

2  misrepresentations or marketing materials omitting material information predominate

3  over any allegedly common issues of a defect or knowledge thereof"); see also Cohen

4  v. DIRECTV, Inc., 178 Cal. App. 4th 966, 980 (2009)("[W]e do not understand the

5  UCL to authorize an award for injunctive relief and/or restitution on behalf of a

6  consumer who was never exposed in any way to an allegedly wrongful business

7  practice.").

8       Here, there is no "cohesion" among putative class members because they were

9  exposed to different misrepresentations in the form of cage cards, pet dealer

10  disclosures, verbal representations by pet store employees, and/or online

11  advertisements by the pet stores.  Each class member's claim will require inquiry into

12  specific facts as to (i) which pet store made the alleged misrepresentation to the class

13  member, (ii) what type of misrepresentation was made to the class member, either in

14  the form of a cage card, pet dealer disclosure, verbal representations by pet store

15  employees, and/or online advertisements by the pet stores, (iii) whether the class

16  member relied on the alleged misrepresentation to purchase his or her puppy, and

17  (iv) whether, but for the misrepresentation, the class member would not have

18  purchased his or her puppy.

19       There can be no presumption of exposure and reliance on a class-wide basis

20  because the putative class members were not exposed to the same alleged

21  misrepresentation, the information to which class members were exposed was not

22  uniform, and the evidence of materiality and reliance will vary from consumer to

23  consumer.  Because individualized purchasing inquiries predominate over common

24  questions of law or fact, Plaintiffs cannot satisfy Rule 23(b)(3), and the proposed class

25  should not be certified.

26       Considering the predominance of individual issues, a class action is not

27  superior over other available methods to fairly adjudicate the controversy.  See Zinser

28  Accufix Research Institute, Inc., supra, 253 F.3d at 1192 ("If each class member has

1  to litigate numerous and substantial separate issues to establish his or her right to

2  recover individually, a class action is not 'superior.'").  The proposed class members

3  have an interest in individually controlling the prosecution of separate actions, and it

4  would be extremely difficult to manage a class action, because each class member

5  must present individualized proof of materiality and reliance.

### B.      Plaintiffs Have Not Meet Their Burden To Satisfy Rule 23(a).

7      Plaintiffs have not met their burden of alleging class action claims pursuant to

8  Rule 23(a) of the Federal Rules of Civil Procedure.  As explained below, Plaintiffs'

9  class action claims do not meet the requirements of Rule 23(a) regarding

10  commonality, typicality, adequacy of representation, and numerosity.   Dkt. No. 1,

11  ¶¶ 222-234. On this ground alone, the Court should strike Plaintiffs' class claims.

### 1.      Plaintiffs' Allegations Regarding  "Commonality" Do Not Meet  Requirement of Rule 23(a)(2).

14      Plaintiffs' class allegations regarding commonality do not meet the

15  requirement of Rule 23(a)(2) that "there are questions of law or fact common to the

16  class[.]"  Fed. R. Civ. P. 23(a)(2).

17      The United States Supreme Court held that class claims "must depend upon a

18  common contention" and "[t]hat common contention . . . must be of such a nature

19  that it is capable of classwide resolution - which means that determination of its

20  truth or falsity will resolve an issue that is central to the validity of each one of the

21  claims in one stroke." <u>Wal–Mart Stores, Inc. v. Dukes</u>, <u>supra</u>, 564 U.S. at 350.

22      Plaintiffs allege there are five common questions of law and fact.  Dkt. No. 1,

23  ¶ 227. None of these questions satisfy the commonality requirement because

24  Plaintiffs do not demonstrate the "capacity of a class-wide proceeding to generate

25  common *answers* apt to drive the resolution of the litigation." <u>Id.</u> at 350 (quoting

26  Nagareda, <u>Class Certification in the Age of Aggregate Proof</u>, 84 N.Y.U.L.Rev. 97,

27  131–132 (2009)).

28

1

2

### a.   Whether Defendants' practices for procuring and labeling puppies were unfair and/or unlawful.

3  Plaintiffs' question as to whether Defendants' "practices" of procuring and

4  labeling puppies were unfair or unlawful is based on the faulty assumption that *all*

5  of the Defendants and *all* of the non-parties named in the Complaint operated the

6  same.  This assumption is belied by Plaintiffs' own allegations regarding

7  defendants' individualized ownership and operations. Dkt. No. 1, ¶¶ 22-38.

8  Specifically, Plaintiffs lump together all purchasers of puppies sourced from

9  JAKs regardless of whether they purchased their puppies from a pet store.  This

10  overly broad definition of the putative class precludes "commonality" because the

11  alleged wrongful acts are predicated on the notion that Defendants violated the

12  former Pet Store Law, which applied only to the sale of dogs through pet stores.  If

13  putative class members purchased puppies sourced from JAKs that did not come

14  through a pet store, those class members have no claims because they did not obtain

15  their puppies through the alleged unlawful source.

16  Plaintiffs' proposed class also lumps together all purchasers of puppies

17  sourced from JAKs regardless of which pet store they purchased their puppies and

18  which rescue organization provided the puppies to that pet store.  The putative class

19  members made their purchases from different pet stores, including defendant

20  Animal Kingdom, the defunct Chavez Pet Stores, the defunct Puppies 4 Less, and

21  the partially-defunct Salinas Pet Stores.  The pet stores, in turn, obtained the puppies

22  from different Rescue Entities, including Bark Adoptions in California, Pet Connect

23  Rescue in Missouri, and the now-dissolved Rescue Pets Iowa in Iowa.  These rescue

24  organizations and pet stores are alleged to be separate entities engaged in different

25  operations and owned by different individuals in different states.  The variances in

26  each entity and the fact each class member's purchase did not involve the same

27  entities are fatal Plaintiffs' "commonality" argument.  Indeed, every class member

28  will need to present individualized proof of his or claim against the specific rescue

organization and specific pet store whose misrepresentations allegedly caused damage to that class member.

Plaintiffs attempt to circumvent this problem by alleging all of the pet stores "uniformly" misrepresented that the puppies were rescues through four different types of representations: (1) cage cards posted at different pet stores, (2) pet dealer disclosures at different pet stores, (3) disparate misrepresentations by unidentified pet store employees at some, but not all, of the pet stores, and (4) online advertisements by some, but not all, of the pet stores.

Cage Cards:  Plaintiffs allege every class member was exposed to a cage card with the same misrepresentation that the puppy was obtained from a bona fide rescue group.  Dkt. No. 1, ¶¶ 146-147.  Plaintiffs provide photographs of cage cards at one Animal Kingdom location and other cage cards at different non-party pet stores: Pups & Pets, Temecula Puppies, Broadway Puppies, and Puppies 4 Less. Id. Each cage card provides unique information about the puppy, including the name of the Rescue Entity and the cost of the puppy. No two misrepresentations are the same.

Pet Dealer Disclosures: Plaintiffs allege every class member was exposed to the same misrepresentation on the pet dealer disclosure at the time of sale. Dkt. No. 1, ¶ 190.  Plaintiffs provide a single photograph of an excerpt of a pet dealer disclosure from one Animal Kingdom location that, according to Plaintiffs, "is similar to all other Pet Stores' disclosures."  Dkt. No. 1, ¶ 190.  But this allegation is undermined by Plaintiffs' allegation that Defendant Animal Kingdom and the non-party pet stores are not owned or operated by the same individuals and, therefore, the proposed class members may not have been exposed to the same alleged misrepresentations when they purchased their puppies.

Verbal Misrepresentations By Pet Store Employees: Plaintiffs allege that employees at some, but not all, of the pet stores made verbal misrepresentations about where they obtained the puppies. Plaintiffs allege the Animal Kingdom staff

in Santa Barbara County told Plaintiff Carey that the puppy she purchased came from a rescue. Dkt. No. 1, ¶ 206.  Plaintiffs allege the manager at Defendant Animal Kingdom's San Luis Obispo location told an undercover investigator that the store had a purebred Corgi, but it could not provide the pedigree papers because it was from a rescue.  Dkt. No. 1, ¶¶ 192-193.  Plaintiffs allege that non-party, Broadway Puppies, told a customer that a puppy came from a local shelter, when it allegedly came from JAKs.  Dkt. No. 1, ¶ 196.  All of these misrepresentations vary by pet store and cannot be grouped together into a single misrepresentation. Notably, Plaintiff Latzer did not allege that he was exposed to a verbal misrepresentation by the Animal Kingdom staff at the San Luis Obispo County location. Dkt. No. 1, ¶¶ 211-221.

Online Advertisements By Pet Stores:  Plaintiffs allege some, but not all, of the pet stores made misrepresentations in their online advertisements about where they obtained the puppies. Plaintiffs allege the Salinas Pet Stores comprised of different pet stores owned by David Salinas advertised their puppies as rescues.  Plaintiffs do not allege the other pet stores, including Defendant Animal Kingdom, made the same online misrepresentations.  Dkt. No. 1, ¶ 195. Because the online misrepresentations vary by pet store, they cannot be grouped together into a single misrepresentation. Further, Plaintiff Carey and Plaintiff Latzer do not allege they were exposed to, or relied on, online misrepresentations.

The range of alleged false statements is far-reaching and not uniform among class members.  Because Plaintiffs do not allege every class member was exposed to the same misrepresentation, Plaintiffs cannot satisfy the "commonality" requirement.

**b.  Whether dogs supplied by JAKs could be legally sold in California after January 1, 2019, merely by being funneled through sham "rescue" organizations.**

The question of whether the dogs could be sold to pet stores in California through each rescue organization requires an individualized analysis as to that specific

16

organization's operations and legitimacy.  Plaintiffs allege each rescue organization was owned and operated by different individuals in different states, that each organization was structured under different state laws, and each one operated separately and independently from each other.  Dkt. No. 1, ¶¶ 22-38.  The differences in the entities' structural organization and operation under different state laws would require the Court to analyze the legitimacy of each rescue organization individually, and not lump them together as a single entity.

### c.    Whether Defendants' conduct is deserving of punitive and/or treble damages.

Plaintiffs allege they are entitled to punitive damages because "Defendants' violations have been serious, numerous, persistent, and willful, and warrant the maximum penalties allowed by law." Dkt. No. 1, ¶ 301.  These allegations improperly group all of the defendants together and do not identify any individual from SEI who committed willful and malicious conduct or that SEI was on advanced notice or ratified such conduct. See Cal. Civ. Code § 3294(g)(provides that when punitive damages are sought against a corporation, a plaintiff must show the corporation's advance knowledge or ratification of the acts of its employees).

Plaintiffs' question about punitive and treble damages is not common to all class members because it requires an analysis of the conduct and knowledge of each individual defendant.  Further, Plaintiffs' Complaint demonstrates that not every defendant was involved in every class member's purchase of his or her puppy from the same pet store.

### d.    Whether Plaintiffs and class members are entitled to injunctive relief.

Plaintiffs' question as to whether the putative class is entitled to injunctive relief is not common to each and every class member because Plaintiffs allege several of the rescue operations and pet stores have been dissolved or shut down, including Defendant Rescue Pets Iowa, some of the Salinas Pet Stores, all of the

17

Chavez Pet Stores, and Puppies 4 Less.  Dkt. No. 1, ¶¶ 79, 132, 142, and 144. The determination of injunctive relief would require an individualized review of each class member's claim, the specific pet store from which each class member purchased his or her puppy, and the specific rescue operation from which the pet store obtained the puppy.

Further, as discussed herein, Plaintiffs lack standing to represent an injunctive relief class because they do not allege that they face a "real and immediate threat of repeated injury."  Garrison v. Whole Foods Mkt. Grp., Inc., supra, 2014 WL 2451290, at *5; Moheb v. Nutramax Labs., Inc., supra, 2012 WL 6951904, at *6 (holding plaintiff and class members "will obtain no benefit from an injunction concerning Defendant's advertising because they cannot demonstrate a probability of future injury.").

> ### e.   Whether Defendants' conduct caused class members damages.

Plaintiffs' question as to whether Defendants' conduct caused class members damages undermines class certification because, without injury, class members have no standing to sue.

California federal courts "have stricken class allegations where the proposed class definition was too broad and contained class members who did not have standing, or where individualized factual or legal inquiries are required to determine whether individuals are members of a proposed class." 1 McLaughlin on Class Actions §§ 3:4, 4:28 (18th ed. 2021).  In Fine v. ConAgra Foods, Inc., No. CV 10–01848 SJO (CFOx), 2010 WL 3632469, *2-3 (C.D. Cal. Aug. 26, 2010), the district court denied class certification in a false advertising case because the proposed class would have included class members who did not make their purchase "*as a result of Defendant's allegedly false statements*" and because plaintiff did not demonstrate that her claim was typical of those of proposed class members.  Id. at *2.  The court held that "class certification is improper, given that Plaintiff's proposed class

18

1  includes many people who may not have relied on Defendant's alleged

2  misrepresentations when making their purchasing decisions." Id. at *2-3; see also

3  Burdick v. Union Sec. Ins. Co., 2009 WL 4798873, *4 (C.D. Cal. Dec. 9,

4  2009)(stating "each class member need not submit evidence of personal standing

5  but, nonetheless, a class must 'be defined in such a way that anyone within it would

6  have standing.'")(citations omitted).

7      Other district court opinions are in accord.  See Hovsepian v. Apple, Inc.,

8  supra, 2009 WL 5069144, at *6 (striking class allegations because purported class

9  included members who did not experience any problems with defendant's computer

10 screens sold by the defendant and, thus, they "have no injury and no standing to

11 sue."); Moore v. Apple Inc., 309 F.R.D. 532, 542 (N.D. Cal. 2015)(stating, "the

12 inclusion of class members whom, by definition, could not have been injured is not

13 only problematic because it demonstrates the overbreadth of the proposed class, it is

14 also indicative of the individualized inquiries that would be necessary to determine

15 whether a class member has suffered any injury in the first place"); Sanders v.

16 Apple Inc., 672 F.Supp.2d 978, 991 (N.D. Cal. 2009)("[N]o class may be certified

17 that contains members lacking Article III standing . . .  The class must therefore be

18 defined in such a way that anyone within it would have standing." Id. at 991

19 (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2nd Cir. 2006)).

20     Plaintiffs define the proposed class as all individuals who purchased a puppy

21 sourced from JAKs in California after January 1, 2019.  This definition is unduly

22 broad because it includes individuals who may not have relied on the defendants'

23 alleged misrepresentations when making their purchasing decisions.   Indeed,

24 Plaintiffs' very question as to *whether* each class member has been injured by SEI's

25 alleged misconduct highlights the deficiency of class certification.

26          **2.   Plaintiffs' Allegations Regarding "Typicality" Do Not Meet**

27              **Requirement of Rule 23(a)(3).**

28     Plaintiffs' class action allegations regarding typicality do not meet the

1   requirement of Rule 23(a) that "the claims or defenses of the representative parties

2   are typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3); <u>see</u>

3   Dkt. No. 1, ¶ 228.

4           Plaintiff Carey allegedly purchased her Cockapoo from the Animal Kingdom

5   pet store in Santa Barbara County, and that Animal Kingdom misrepresented the

6   puppy was a rescue sourced from Bark Adoptions Rescue through the cage card, the

7   pet dealer disclosure, and oral representations by the pet store employee.   Dkt. No.

8   1, ¶ 205-210.  Plaintiff Latzer allegedly purchased his Australian cattle dog from

9   another Animal Kingdom pet stores in San Luis Obispo County, and that Animal

10  Kingdom misrepresented the puppy was a rescue sourced from Pet Connect Rescue

11  through the cage card and the pet dealer disclosure, but no oral representations were

12  made by pet store employees.  Dkt. No. 1, ¶¶ 211-220.

13          The named plaintiffs' claims are not typical of the proposed class because

14  their claims are limited to alleged misrepresentations on cage cards posted at

15  different Animal Kingdom stores and pet dealer disclosures given to them at the

16  time of sale. They do not allege that they were exposed to misrepresentations by the

17  non-party pet stores, including the Salinas Pet Stores, the Chavez Pet Stores, and

18  Puppies 4 Less, and they do not allege they were exposed to online advertisements

19  by the pet stores. Plaintiffs also do not allege Plaintiff Latzer was exposed to any

20  verbal misrepresentations by pet store employees.  The multiple sources of alleged

21  misrepresentations would necessitate an individualized inquiry into which class

22  members were exposed to which type of misrepresentation.

23              **3.    Plaintiffs' Allegations Regarding "Adequacy of**

24                  **Representation" Do Not Meet Requirement of Rule 23(a)(4).**

25          Plaintiffs' class action allegations regarding adequacy of representation do not

26  meet the requirement of Rule 23(a) that "the representative parties will fairly and

27  adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

28          The named plaintiffs allege they will adequately represent the class because

their interests do not conflict with the interest of the Class members that they seek to represent and they have retained experienced counsel.  Dkt. No. 1, ¶ 229.  However, the analysis does not end there. As discussed herein, the named plaintiffs do not have standing to adequately represent an "injunctive relief class" under Rule 23(b)(2) because they do not allege they intend to engage in business with defendants in the future and, therefore, they do not face a real and immediate threat of future harm. Further, the named plaintiffs do not allege that they were exposed to the same alleged misrepresentations in the form of cage cards, pet dealer disclosures, verbal statements by pet store employees, and online advertisements.

Finally, Plaintiffs' counsel is the Animal Legal Defense Fund ("ALDF"), a well-known organization that emphasizes on its website that it "files high-impact lawsuits to protect animals from harm . . . ."[4]   ALDF appears to control this lawsuit, not the named plaintiffs.  See Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 525 (C.D. Cal. 2012)(noting there is no adequacy of representation when named plaintiffs have "abdicated any role in the case beyond that of furnishing their names as plaintiffs")(quoting Helfand v. Cenco, Inc., 80 F.R.D. 1, 7 (N.D. Ill 1977)). Plaintiffs are not adequate representatives for the proposed class.

### 4. Plaintiffs' Class Allegations for "Numerosity" May Not Meet Requirement of Rule 23(a)(1) If Proposed Class Is Reduced.

SEI does not challenge Plaintiffs' allegation that the proposed class, which is defined as "more than 1,500 individuals [who] purchased puppies in California sourced from JAKs" satisfies the numerosity requirement at the pleading stage.  Dkt. No. 1, ¶ 225.  However, the proposed class includes individuals who may not have purchased puppies from pet stores, who were not exposed to the same alleged misrepresentations, and who did not rely on alleged misrepresentations in the purchase of their dogs.  Therefore, SEI reserves its right to challenge the numerosity

---

[4] See https://aldf.org/ (last visited on February 1, 2022).

1  requirement in the event the proposed class is reduced.

2  **C.      Plaintiffs' Class Allegations Should Be Stricken At Pleading Stage.**

3  Plaintiffs' class allegations should be stricken at the pleading stage pursuant

4  to Rule 12(f) of the Federal Rules of Civil Procedure on the ground that it is clear

5  from the Complaint that a class action cannot be certified because of the way

6  Plaintiffs define the class and frame the issues.

7  Here, Plaintiffs propose to represent an overly broad class of individuals who,

8  on or after January 1, 2019, purchased dogs in California allegedly sourced from

9  JAKs.  As explained herein, the problematic issues for class certification can be

10  gleaned from the definition of the class itself in that the Court will need to make

11  individual inquiries of each class member as to which pet store, if any, the class

12  member purchased the dog, whether he or she was exposed to a misrepresentation as

13  to the source of the dog, what type of misrepresentation he or she was exposed to in

14  the form of cage cards, pet dealer disclosures, oral misrepresentations by pet store

15  employees, and/or online advertisements, and whether the class member relied on

16  the misrepresentation to purchase a dog.  Therefore, this is an appropriate case to

17  strike the class allegations at the pleading stage.

18  **V.    Conclusion**

19  For the foregoing reasons, Defendants Subject Enterprise, Inc., and Coda

20  Subject respectfully request the Court grant this Motion and strike Plaintiffs' class

21  action claims in their Complaint.

22   Dated:  March 4, 2022                              **CONTI LAW**

23                                                  By:    /s/ *Alexander L. Conti*

24                                                         Alexander L. Conti
                                                       Attorneys for Defendants, Subject
25                                                     Enterprise, Inc., and Coda Subject

26

27

28

## **PROOF OF SERVICE**

1

2    I am employed in the County of Orange, State of California.  I am over the age of 18
and not a party to the within action; my business address is Conti Law 23 Corporate
3    Plaza, Suite 150, Newport Beach, CA 92660.  On March 4, 2022, I served the
foregoing document described as: **MEMORANDUM OF POINTS AND**
4    **AUTHORITIES IN SUPPORT OF DEFENDANTS SUBJECT ENTERPRISE,**
**INC., AND CODA SUBJECT'S MOTION TO STRIKE CLASS CLAIMS**
5    **PURSUANT TO RULE 12(f) OF THE FEDERAL RULES OF CIVIL**
**PROCEDURE** on:

6

| | |
|---|---|
| Isabel F. Callego-Brighton, Esq.<br>Animal Legal Defense Fund<br>525 E. Cotati Ave.<br>Cotati, CA  94931 | Attorneys for Plaintiffs REBECCA<br>CAREY, and CODY LATZER<br>Email: icallejo-brighton@aldf.org |
| Caitlin M. Foley, Esq.<br>Animal Legal Defense Fund<br>150 S. Wacker Dr., Ste. 2400<br>Chicago, IL  60606 | Attorneys for Plaintiffs REBECCA<br>CAREY, and CODY LATZER<br>Email: cfoley@aldf.org |
| Ariel Flint, Esq.<br>Animal Legal Defense Fund<br>2125 24th St.<br>Astoria, NY  11105 | Attorneys for Plaintiffs REBECCA<br>CAREY, and CODY LATZER<br>Email: aflint@aldf.org |
| Claire Tonry, Esq.<br>Knoll D. Lowney, Esq.<br>Smith & Lowney, PLLC<br>2317 E. John St.<br>Seattle, WA  98112 | Attorneys for Plaintiffs REBECCA<br>CAREY, and CODY LATZER<br>Telephone: (206) 860-2883<br>Facsimile: (206) 860-4187<br>Email: claire@smithandlowney.com<br>Email: knoll@smithandlowney.com |
| Sanger Swysen & Dunkle<br>Catherine J. Swysen<br>Attorneys for Defendants Rescue Pets<br>Iowa, Russell Kirk, and TBHF, LLC<br>d/b/a The Pet X Change | 222 East Carrillo Street, Suite 300<br>Santa Barbara, CA 93101<br>Telephone: (805) 962-4887<br>Fax: (805) 963-7311<br>cswysen@sangerswysen.com |
| The Najjar Law Firm<br>George R. Najjar, Esq.<br>Attorneys for Defendants Ray Rothman,<br>Alysia Rothman, and Pet Connect<br>Rescue, Inc. | 1901 First Avenue<br>First Floor<br>San Diego, CA 92101<br>Phone: (619) 233-3445<br>gnajjar1@san.rr.com |
| Ross, Wolcott, Teinert & Prout LLP<br>Andrew G. Prout, Esq. | 3151 Airway Avenue, Bldg. S-1<br>Costa Mesa, CA 92626<br>Direct: 714-884-4134<br>Fax: 714-444-3901 |

| Attorneys for Defendants, J.A.K.'s PUPPIES, INC., JOLYN NOETHE, and KIMBERLY DOLPHIN | AGP@RossLLP.com |
|---|---|
| REYNOLDS TILBURY WOODWARD LLP Tory E. Griffin Attorneys for Defendants ADAM TIPTON AND MICADA, INC. | 11601 Blocker Drive, Ste. 105 Auburn, CA  95603 530.885.8500 (Office) 530.653.8426 (Direct) 530.885-8113 (Fax) tgriffin@rtwlawllp.com |

[  ]    (BY MAIL) I am familiar with the practice of Conti Law for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Conti Law, Newport Beach, California, following ordinary business practices.

[  ]    (BY OVERNIGHT MAIL) I am familiar with the practice of Conti Law for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by FedEx/Overnite Express that same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by FedEx/Overnite Express with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by FedEx/Overnite Express at Conti Law, Corona Del Mar, California, following ordinary business practices.

[  ]    (BY FACSIMILE TRANSMISSION) On this date, at the time indicated on the transmittal sheet, attached hereto, I transmitted from a facsimile transmission machine, which telephone number is (949) 791-8556, the document described above and an unsigned copy of this declaration to the person, and at the facsimile transmission telephone numbers, set forth herein.  The above-described transmission was reported as complete and without error by a properly issued transmission report issued by the facsimile transmission machine upon which the said transmission was made immediately following the transmission.

[ x  ] (BY ELECTRONIC MAIL) On this date, from my email address of aconti@conti-law.com I caused a copy of said document to be transmitted via electronic mail to the e-mail addresses listed above.

[  ]    (BY MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the person at the addresses listed above and/or providing them to a professional messenger service for service.  [Declaration of Messenger attached separately.]

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on March 4, 2022, at Newport Beach, California.

/s/ *Alexander L. Conti*

Alexander L. Conti

PROOF OF SERVICE